## Lipman Manufacturing Company *v.* Western Union Telegraph Company, Appellant.

*Telegraph company—Mistake in transmitting messages—Unrepeated message—Liability of sender—Directed verdict—Interstate Commerce Act of June 18, 1910, 36 Stat. 539.*

In an action of trespass against a telegraph company to recover damages resulting from defendant's mistake in transmitting an interstate message giving the price of goods offered for sale, plaintiff's claim was for the difference between the price intended to be quoted, and the amount received from the purchaser in settlement. There was no evidence showing that the price at which settlement was made with the purchaser was the best price obtainable for the goods or that the price quoted was the market price. It was not shown

that the message was a repeated message, or a specially valued message.

In such case, it was error for the court to direct a verdict in favor of the plaintiff for the amount of its claim.

The liability of a telegraph company for a mistake in the transmission of an interstate message which is neither a repeated message nor a specially valued message is limited under the Interstate Commerce Act of June 18, 1910, 36 Stat. 539, to the amount it received for the service.

Argued October 19, 1927.    Appeal No. 48, October T., 1927, by defendant from judgment of M. C., Philadelphia County, October T., 1924, No. 658, in the case of Rubin Lipman, Bud A. Lipman and Aaron Lipman, trading as Lipman Manufacturing Company, v. Western Union Telegraph Company.    Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.    Reversed.

Trespass against a telegraph company to recover damages resulting from a mistake in transmitting an interstate message.    Before Walsh, J.

The facts are stated in the opinion of the Superior Court.

The Court directed a verdict for plaintiff in the sum of $326.79, and entered judgment thereon.    Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*Howard Burtt* of *Guckes, Shrader, Burtt & Thornton,* for appellant.

*Edwin Fischer* of *Rose & Fischer,* for appellee.

Opinion by Cunningham, J., March 16, 1928:

By an action of trespass in the Municipal Court the Lipman Manufacturing Company sought to recover damages from the Western Union Telegraph Com-

pany, alleged to have been suffered by it through the negligence of defendant in erroneously transmitting a telegram addressed to one of plaintiff's customers. Defendant offered no testimony but presented a number of points for charge, several of which requested binding instructions. The trial judge directed a verdict for plaintiff in the sum of $294, with interest; refused defendant's motion for judgment n. o. v. and entered judgment on the verdict; hence this appeal by defendant. The assignments requiring discussion are those alleging that the trial judge adopted an erroneous measure of damages and erred in directing a verdict for plaintiff. The material facts are not in dispute and the questions involved under them are whether the case was for the jury and, if so, what the measure of plaintiff's damages was. The telegram alleged to have been wrongly transmitted was one of a series passing between one S. Bernsteine, doing business as the Boston Store, of Kokomo, Indiana, and the plaintiff company, relative to the sale by it to Bernsteine of a number of dresses.

On June 13, 1924, plaintiff received from Bernsteine a telegram stating that he could "use one hundred childrens and Juniors dresses at close out price." The same day plaintiff sent Bernsteine the telegram, in the transmission of which the error occurred. As written and filed with the defendant company it read: "Can ship two hundred Junior dresses in linen, silkette, dotted plain and fancy voil @ 2.75 net, also six dozen children's dresses cotton shantungs, voils, pop- lins and linens @ $16.50 net dozen, advise all close out prices wonderful opportunity for a big sale." As transmitted by the telegraph company to Bernsteine the first quotation read: "Can ship two hundred junior dresses in linen silkette dotted plain and fancy voils at twenty seventy-five net" etc. Upon receipt of this telegram Bernsteine, on the same day, wired plaintiff "Send entire lot of dresses as per telegram." The

next day, Saturday, June 14, 1924, plaintiff shipped
Bernsteine twenty-four dozen junior dresses and billed
him at the price of $2.75 for each dress—$33 per dozen
—or a total of $792. Two days later, June 16th, Bern-
steine wired plaintiff "Invoice received does not agree
with your telegram of Friday will not accept merchan-
dise unless billed as bought wire answer." On the
same day plaintiff, without making any inquiry of de-
fendant or of Bersteine relative to the discrepancy
between the invoice and its telegram of June 13th,
wired Bernsteine: "Accept merchandise and advise
whats wrong will adjust to your satisfaction." Upon
the settlement of the account between plaintiff and
Bernsteine, Bernsteine paid for the twenty-four dozen
dresses at the rate of $20.75 per dozen, or $498, and
plaintiff remitted the difference of $294 between that
amount and the amount of its original invoice in the
sum of $792. The trial judge directed the jury to
render a verdict in favor of plaintiff for the amount
of this difference. It is to be noted that the contest
here is between the sender of the message in which the
error occurred and the telegraph company. If it had
been between the sender and the recipient over their
respective rights and liabilities many of the questions
discussed in the briefs—for instance, the effect of
Bernsteine's selection of a telegraph company as the
means of communication, and whether, in view of the
specific use by plaintiff of the word "dozen" in the
second part of its message and its absence in the first,
he had any reasonable ground to assume that the
quotation of $20.75 in the message as delivered to him
meant a price per dozen—would have been material.
Or, if Bernsteine were suing as the receiver of the
message and claiming that he had suffered damages,
his right, under all the circumstances, to interpret the
message as he did might be debatable. But Bern-
steine is not suing; he was not injured in any way.
When it developed that plaintiff's offer had really

been at $33 per dozen and not at $20.75, as he interpreted the message, Bernsteine (unlike the buyer in Joynes v. Postal Telegraph Cable Co., 37 Pa. Superior Ct. 63) promptly refused to pay the higher price and plaintiff made no effort to compel him to pay it. On the contrary, plaintiff, without attempting to ascertain, either from defendant or Bernsteine, to what extent its invoice differed from its telegram quoting prices, wired Bernsteine to keep the dresses and advise what was wrong, and promised to make an adjustment satisfactory to him. This suit is brought upon the theory that the sender could make any adjustment it chose with Bernsteine and then have a remedy over against defendant for the difference between the price it actually quoted and the price received as a result of such voluntary settlement. Apparently this theory was adopted by the court below and in our opinion is so erroneous that the judgment must be reversed with a venire. No affidavit of defense was filed and defendant did not offer any evidence. Assuming under the undisputed facts of this case that the trial judge would be justified in instructing the jury that defendant was negligent it does not necessarily follow that it would be liable for damages beyond the amount received for sending the message. Aside from the matter of the applicability to this message of tariffs filed under the Interstate Commerce Act, hereinafter referred to, the measure of damages adopted was incorrect. Plaintiff was induced, by reason of the messages passing on June 13, 1924, including the one erroneously transmitted, to ship the merchandise to Kokomo, Indiana, the next day instead of selling it in Philadelphia. On June 16th it learned that, by reason of some discrepancy between its telegram and its invoice, the customer refused acceptance. Plaintiff could then elect between disposing of the merchandise for the best price obtainable in Kokomo or having it returned

—whichever would best serve to minimize any loss. He elected to dispose of the dresses at Kokomo.

It was therefore essential that the market value of the dresses at Philadelphia on June 13th and the highest price obtainable on June 16th at Kokomo be shown. These figures were not shown. There was no evidence that the price plaintiff quoted—$33 per dozen—was the market value of the dresses at that time or that Bernsteine, or any other purchaser, would have accepted that offer even if it had been correctly transmitted. Nor was there any evidence that the price at which Bernsteine was permitted to keep the merchandise was the best price obtainable at Kokomo. This lack of evidence with respect to market values is not the only difficulty arising out of the manner in which this case was tried. The message was transmitted in the interstate service of defendant, but neither plaintiff nor defendant undertook to show whether it was a repeated or a specially valued message or merely an unrepeated one. Nor did defendant show what provisions, if any, of its approved tariffs were applicable to the service rendered plaintiff.

In the recent case of Western Union Telegraph Company, Petitioner, v. C. H. Priester, decided February 20, 1928, by the Supreme Court of the United States and not yet reported, the sender of a message from a point in Alabama to a point in Louisiana offered to sell to the addressee a quantity of pecans at fifty cents per pound, but in the message as transmitted the word "fifteen" was substituted for the word "fifty." The sender suffered damages in the sum of $352.10 through the negligent transmission of the message. The telegraph company defended upon the ground that the message was neither a repeated message nor a specially valued message and therefore its liability was limited under its tariffs (filed pursuant to the provisions of the Interstate Commerce

Act, as amended by the Act of June 18, 1910, c. 309, Sec. 7, 36 Stat. 539; U. S. Comp. Stat. 1916, Vol. 8, Sec. 8563, and approved by the Interstate Commerce Commission) to the "amount received for sending the same." After referring to the provisions of the Interstate Commerce Act, Mr. Justice Stone, in the course of the opinion, said: "The established rates for unrepeated messages thus became the lawful rates and the attendant limitation of liability became the lawful condition upon which messages might be sent. [Citing cases] ...... The message here was unrepeated and the loss resulted from a mistake in transmission. The case thus comes within the express provision of clause 1 of the tariff, limiting the liability to the amount received for the service." A proper disposition of this case cannot be made upon the record as it now stands and we are of opinion that the parties should be afforded an opportunity to have the case tried upon its merits.

The judgment is reversed with a venire.